IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


MATTHEW LEE YANDELL,                          Case No. 3:11-cv-00970-MO

                    Petitioner,                        OPINION & ORDER
        v.

J.E. THOMAS,

                    Respondent.



        MATTHEW LEE YANDELL
        65685-065
        Federal Correctional Institution
        P.O. Box 5000
        Sheridan, OR  97378

            *Pro Se* Petitioner


        S. AMANDA MARSHALL
        United States Attorney
        RONALD K. SILVER
        Assistant United States Attorney
        1000 SW Third Avenue, Suite 600
        Portland, OR  97204-2902

            Attorneys for Respondent



1 - OPINION AND ORDER

MOSMAN, District Judge.

Petitioner, an inmate at the Federal Correctional Institution, Sheridan, Oregon ("FCI Sheridan"), brings this habeas corpus action pursuant to 28 U.S.C. § 2241.  The *pro se* petition is liberally construed to assert that the Bureau of Prisons ("BOP") made a legal mistake and retroactively applied the current, March 16, 2009, regulations governing eligibility for early release pursuant to 18 U.S.C. § 3621(e), when determining his eligibility.  Upon review of the record, the Court finds no legal error in the BOP's applying the March 16, 2009, regulations to Petitioner's eligibility determination.  Accordingly, habeas relief is not warranted.

<u>**BACKGROUND**</u>

I.   <u>Statutory Background</u>.

In 18 U.S.C. §§ 3621-3625, Congress vested the BOP with broad authority to manage the imprisonment of a convicted person, and specified "[t]he Bureau shall make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse."  18 U.S.C. § 3621(b).  In § 3621(e), Congress articulated a specific statutory mandate for residential substance abuse treatment programs for eligible prisoners.  The program the BOP created to satisfy this mandate is the Residential Drug Abuse Program ("RDAP").

In 1994, Congress enacted the Violent Crime Control Law Enforcement Act of 1994 ("VCCLEA"), which amended 18 U.S.C. § 3621 to include a discretionary early release incentive for inmates

convicted of nonviolent offenses who successfully completed RDAP. 18 U.S.C. § 3621(e)(2).[1]  Beginning in 1995, exercising its broad discretion under the statute, the BOP promulgated a series of implementing regulations and internal agency guidelines for administering the early release incentive under 3621(e)(2).  The regulations and guidelines exclude certain categories of inmates from early release eligibility.  *See* 28 C.F.R. §§ 550.55(b) (2009). The substantive and procedural validity of these categorical exclusions have been challenged in court repeatedly.  The substantive validity of the regulations -- that is, the BOP's authority under the statute to exclude categories of inmates from early release eligibility -- is now well established.  *See Lopez v. Davis*, 531 U.S. 230 (2001)(the categorical exclusion of certain inmates from early release eligibility was a proper exercise of the BOP's discretion under the statute); *Bowen v. Hood*, 202 F.3d 1211 (9th Cir. 2000) (same, upholding 28 C.F.R. § 550.58(a)(1)(vi)(B));[2] *Jacks v. Crabtree*, 114 F.3d 983 (9th Cir. 1997) (BOP has discretion

----

[1]Section 3621(e)(2)specifies in relevant part:
(A)  Generally.  Any prisoner who, in the judgment of the Director of the [BOP], has successfully completed a program of residential substance abuse treatment provided under paragraph (1) of this subsection, shall remain in the custody of the [BOP] under such conditions as the Bureau deems appropriate. *****
(B) Period of Custody.  The period a prisoner convicted of a nonviolent offense remains in custody after successfully completing a treatment program may be reduced by the [BOP], but such reduction may not be more than one year from the term the prisoner must otherwise serve.

[2]28 C.F.R. § 550.58(a)(1)(vi)(B)(2000) was re-codified as 28 C.F.R. § 550.55(b)(5)(ii)(2009).

under the statute to issue regulations categorically denying early release).  The procedural validity of the current regulations, however, continues to be challenged.[3]

Section 553 of the APA outlines notice and comment requirements for issuing agency regulations.[4]  Section 706(2)(A) specifies a "reviewing court shall hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  The Ninth Circuit has invalidated several versions of the BOP regulations implementing the early release incentive under either § 553 or § 706(2)(A) of the APA.  *See Paulsen v. Daniels*, 413 F.3d 999, 1005 (9th Cir. 2005) (1997 interim rule invalid because BOP violated notice and comment requirements of § 553); *Arrington v. Daniels*, 516 F.3d 1106, 1113 (9th Cir. 2008) (invalidating 2000 regulation because "the administrative record contains no rationale explaining the [BOP's] decision to categorically exclude prisoners with convictions involving firearms").

---

[3]In *Lopez*, the Supreme Court did not address the procedural validity of the categorical exclusions under the APA.  531 U.S. at 244 n.6.

[4]Under the APA, agencies issuing rules must: (1) publish notice of the proposed rule-making in the Federal Register; (2) provide a period of comment on the proposed rule and consider comments submitted during the period before adopting the rule; and (3) publish the adopted rule not less than thirty days before its effective date.  5 U.S.C. § 553(b)-(d).

In the time between the decision in *Arrington* was announced, invalidating § 550.58(a)(1)(vi)(B)(2000), and the issuance of new regulations, effective March 16, 2009, inmates in the Ninth Circuit who had been designated ineligible for the early release incentive based on the invalidated rule had their eligibility determinations reviewed.[5]  Ineligibility for the incentive that rested solely on the invalidated regulation was reversed.

In issuing the 2009 regulations, the BOP again relied on the discretion of the Director under the governing statute, as recognized in *Lopez,* to exclude certain categories of inmates from early release eligibility.[6]  In challenges to the procedural validity of the March 16, 2009, regulations, this Court has held that the regulations are valid under the APA. *See e.g. Peck v. Thomas*, 787 F.Supp.2d 1145 (D.Or., March 30, 2011)(upholding § 550.55 (b)(5)); *Moon v. Thomas*, 787 F.Supp.2d 1154 (D.Or., April 1, 2011)(upholding § 550.55 (b)(4)& (b)(5)); *Ruby v. Thomas*, 2011 WL 1549205 (D.Or., April 21, 2011)(upholding Program Statement rule that RDAP eligibility interviews are to be held ordinarily no less than 24 months from release); *Fiscus v. Thomas*, 2011 WL 2174025

---

[5]A number of other circuit courts upheld the procedural validity of § 550.58(a)(1)(vi) under the APA and no review was required.  *See Gatewood v. Outlaw*, 560 F.3d 843 (8th Cir. 2009); *Gardner v Grondolsky*, 585 F.3d 786 (3rd Cir. 2009); *Handley v. Chapman*, 587 F.3d 273 (5th Cir. 2009); *Licon v. Ledezma*, 638 F.3d 1303 (10th Cir. 2011)

[6]In one action, the 2009 Rule finalized three proposed rules, issued in 2000, 2004, and 2006.  74 FR 1892-01, 2009 WL 76657 (January 14, 2009.)

(D.Or., May 31, 2011)(upholding sliding scale sentence reduction). In *Close v. Thomas*, 653 F.3d 970, 976 (2011), the Ninth Circuit upheld the validity of the rule specifying that RDAP-eligible inmates would be ranked on the RDAP wait-list based on their "proximity to release" using the good-time release date.

The March 16, 2009, regulations, and accompanying Program Statements, apply to inmates who were interviewed for RDAP and found eligible to participate -- by the BOP -- after March 16, 2009, the effective date of the regulations. *See Mora-Meraz v. Thomas*, 601 F.3d 933, 936 n.4 (9th Cir. 2010) (*citing Bowen*, 202 F.3d at 1220-21 and *Cort v. Crabtree*, 113 F.3d 1081, 1085 (9th Cir. 1997) in stating drug abuse program rules are prospective in nature).

II. <u>Procedures for Participating in RDAP</u>

The authority to administer RDAP and other treatment programs is delegated to the BOP. *See* 18 U.S.C. § 3621(b), (e), and (f). The 2009 implementing regulations and the preceding 2000 regulations specify that to participate in RDAP an inmate: (1) may be referred by unit team or drug treatment staff, or (2) may apply for the program by submitting a request to staff, "ordinarily a member of the unit team or the Drug Abuse Program Coordinator." 28 C.F.R. § 550.53(c)(2009); 28 C.F.R. § 550.56(b)(2000). Both the 2000 and 2009 regulations also specify it is the Drug Abuse Program Coordinator who makes the final determination on whether an inmate

participates in RDAP based on admission criteria. 28 C.F.R. § 550.53(e)(2009); § 550.56(b)(2000).

Internal agency guidelines specify that a staff referral for participation in RDAP or an inmate's application for participation leads to screening for documentation verifying a substance abuse problem. Program Statement 5330.11, 2.5.8 RDAP Program Admission (2009). Inmates who pass screening are then referred for a clinical interview with the Drug Abuse Program Coordinator, who will make a determination as to whether the inmate is eligible to be placed in RDAP. *Id*. at 2.5.8. The preceding Program Statement describes similar procedures for determination of RDAP eligibility. *See* PS 5330.10, Chpt. 2, 2.3.1 (1997).

III. <u>Statement of the Case</u>

On December 18, 2002, Petitioner was sentenced to 151 months imprisonment and 5 years supervised release on his conviction for Conspiracy to Manufacture and to Possess with Intent to Distribute More than 50 grams Actual Methamphetamine in violation of 21 U.S.C. 846 and 841(b)(1)(A). (#16, Attach. 1.) Petitioner's sentencing included a two-point Specific Offense Characteristic enhancement for possession of a firearm in connection with his offense. (#14, at 2; #16, at 2.) Petitioner's projected good time release date is August 7, 2013. (#16, at 2.)

Petitioner was initially designated to a BOP facility in Wisconsin. (#1, Ex. B at 2.) He was re-designated to Federal Correctional Complex Terre Haute, Indiana in April 2005. (*Id*.)

Program Review Reports from FCI Terre Haute dated August 2, 2008, and February 2, 2009, specify "Comp RDAP by rlse" under long-term goals. (#1, Ex. D at 3; Ex. E at 2.) The February 2009 review report also includes an inmate request to transfer to FCI Sheridan. (#1, Ex. E at 3.) A request for transfer form prepared by Petitioner's case manager and dated February 20, 2009, specifies, in relevant part:

> Rationale for Referral: Rationale is nearer release. Inmate Yandell is over 500 miles from his family who reside in Oregon. His Unit Team recommends he be transferred to FCI Sheridan in order to better maintain family ties and assist with visiting.

(#15, Attach. 3.)

Petitioner was interviewed for RDAP eligibility by the Drug Abuse Program Coordinator ("DAPC") at FCI Terre Haute on August 20, 2010. (#1, Ex. A.) Upon finding Petitioner eligible for RDAP, the DAPC submitted a Request for § 3621(e) Offense Review to the BOP Designation and Sentence Computation Center ("DSCC") in Texas. DSCC legal staff completed the offense review on September 1, 2010, finding Petitioner to be ineligible for the RDAP-related early release incentive. (#16, at 3.) The Offense Review form specified that Petitioner's conviction offense and offense characteristic enhancement rendered him ineligible pursuant to 28 C.F.R. §§ 550.55(b)(5)(ii) and (iii); § 550.55(b)(5); and Program Statement P5162.05, Sections 4.b and 4.d. (#1, Ex. A.) DSCC staff also found *Arrington* did not apply to Petitioner's review because he "ha[d] not provided sufficient documentation demonstrating that

he applied to RDAP prior to March 16, 2009," the effective date of the current regulations. (#16, at 4.)

Petitioner challenged the early release ineligibility determination through BOP administrative remedies after he was transferred to FCI-Sheridan. As evidence of his interest in RDAP, Petitioner submitted his program review reports from August 2008 and February 2009 in which RDAP was listed as a long term goal. (#1, Ex. BP8-BP11.) In his written response, the FCI Sheridan Warden told Petitioner the program reports appeared to reflect a goal put forth by his treatment team, but that the documents had been forwarded to the DSCC for review since no action could be taken at FCI Sheridan. (#1, Ex. BP9 at 2.) Petitioner appealed, and a response by the Regional Director informed Petitioner that his appeal had been investigated; that the regulations he challenged had been properly promulgated and became effective March 16, 2009; that the program reports he furnished were not considered sufficient evidence to show he had actually applied for RDAP prior to March 16, 2009, and, therefore, his appeal was denied. (#1, Ex. BP10 at 2.) Petitioner submitted an appeal to the BOP's Central Office. The BOP sent Petitioner a notice of Extension of Time for Response, but no other response to the appeal is included in the record. (#1, Ex. BP11 at 3.) Petitioner filed the instant petition on August 11, 2011, claiming *Arrington* governs his eligibility determination and the March 2009 regulations were unlawfully applied.

9 - OPINION AND ORDER

## DISCUSSION

District courts do not have jurisdiction to review "any substantive decision by the BOP to admit a particular prisoner into RDAP, or to grant or deny a sentence reduction for completion of the program." *Reeb v. Thomas*, 636 F.3d 1224, 1227 (9th Cir. 2011). The Court does, however, have jurisdiction to review BOP action alleged to be contrary to established federal law or to exceed the agency's statutory authority. *Id*. at 1228. The *pro se* petition is liberally construed to assert that the BOP made a legal mistake and retroactively applied the current, March 16, 2009, regulations governing eligibility for early release pursuant to 18 U.S.C. § 3621(e), rather than applying the rules under *Arrington* when determining his eligibility. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (courts construe *pro se* pleadings liberally); *Porter v. Ollison*, 620 F.3d 952 (9th Cir. 2010)(same). Thus, the issue before the Court is whether the BOP violated the retroactivity doctrine and impermissibly applied the March 16, 2009, regulations to Petitioner's early release eligibility determination.[7]

## I.   Retroactivity Doctrine

The retroactivity doctrine conveys the long-standing presumption against the retroactive application of laws when such an application would "tak[e] away or impai[r] vested rights

---

[7] The Court will not review the individualized determination by the BOP that the program reports Petitioner submitted as evidence were insufficient to establish he applied for RDAP prior to March 16, 2009.

acquired under existing laws, or creat[e] a new obligation, impos[e] a new duty, or attac[h] a new disability, in respect to transactions or considerations already past." *Vartelas v. Holder*, ---S.Ct.---, 2012 WL 1019971 *6 (March 28, 2012)(alteration in original)(quoting *Society for Propagation of Gospel v. Wheeler*, 22 F.Cas. 756, 767 (No. 13, 156)(CCNH 1814), Story, J.). "Elementary considerations of fairness dictate that individuals should have an opportunity to know what the law is and to conform their conduct accordingly; settled expectations should not be lightly disrupted." *Landgraf v. USI Film Products*, 511 U.S. 244, 265 (1994).

The regulations and agency guidelines governing BOP drug treatment programs are prospective in nature. *See Mora-Meraz*, 601 F.3d at 936 n.4. In retroactivity challenges to BOP program-related action, the Ninth Circuit's determinations regarding impermissible retroactivity rest on whether inmates had received formal eligibility determinations and thus had settled expectations. *Cort*, 113 F.3d at 1085 (application of rule impermissibly retroactive because inmates received formal eligibility determination, and thus had a settled expectation, prior to effective date of rule change); *Bowen*, 202 F.3d at 1220-21 (same, as to inmates who received eligibility determinations, but not impermissibly retroactive as to inmates who had not received formal eligibility determinations); *Furquiel v. Benov*, 155 F.3d 1046, 1048 (9th Cir. 1998)(despite current enrollment in RDAP, no settled expectation of early release eligibility absent formal

11 - OPINION AND ORDER

notification of such); *see also Serrato v. Clark*, 486 F.3d 560, 571-72 (9th Cir. 2007) (retroactivity challenge fails because inmate not officially notified of eligibility for boot camp); *Paulsen*, 413 F.3d at 1008 (habeas relief granted to those disqualified prior to issuance of final rule).

II.  Analysis

    In his declaration, Petitioner's case manager at FCI Terre Haute states that he felt strongly Petitioner would benefit from RDAP; that he noted RDAP completion on Program Review Reports as a goal for Petitioner prior to release; that he encouraged Petitioner to submit a request to Psychology Services, but did not recall if Petitioner had expressed an interest in doing so; that had Petitioner expressed an interest he would have instructed him to submit a request to Psychology Services since the unit teams at Terre Haute do not accept requests to participate in RDAP.  (#15, at 2-3.)  The case manager also states that the reason for the request for transfer to FCI Sheridan was to allow Petitioner to be closer to his family, and that if participation in RDAP had been a reason for transfer, he would have included this information on the Request for Transfer.  (*Id*. at 3.)

    The case manager's declaration does not provide evidence that Petitioner received formal notification of RDAP eligibility or followed procedures to apply for RDAP prior to March 16, 2009.  The record does show Petitioner was interviewed for RDAP by the Drug Abuse Coordinator at FCI Terre Haute on August 10, 2010, and was

found to be eligible.  (#29, at 1.)  Thereafter, an Offense Review was submitted to the DSCC, and a determination that Petitioner was ineligible for early release was made on September 21, 2010. (*Id.*, at 2.)

Upon review of the record, the Court finds no evidence that Petitioner received a formal RDAP eligibility notification from the BOP, or that he followed application procedures prior to March 16, 2009.  Applying the analysis used by the Ninth Circuit in *Cort* and subsequent retroactivity challenges to BOP action under newly promulgated program rules, the Court concludes there could be no settled expectation relating to RDAP, or the related early release incentive.  Accordingly, the BOP did not violate the retroactivity doctrine when it applied the March 16, 2009, regulations in determining Petitioner's ineligibility for the early release incentive.

<u>**CONCLUSION**</u>

Based on the foregoing, Petitioner's Petition for Writ of Habeas Corpus (#1) is DENIED, with prejudice.

IT IS SO ORDERED.

DATED this  <u>11th</u>  day of April, 2012.


<u>/s/ Michael W. Mosman</u>
Michael W. Mosman
United States District Judge